[Civ. No. 9168. First Appellate District, Division One.—December 3, 1934.]

PAUL F. SPEIDEL, Appellant, v. E. B. LACER (a Former Copartnership, etc.) et al., Respondents.

Ford & Johnson for Appellant.

Joseph T. O'Connor, R. E. Fitzgerald and Leo R. Friedman for Respondents.

JOHNSTON, J., *pro tem.*—The facts in the above-entitled cause are that a few days prior to the twenty-fourth day of August, 1928, the Standard Oil Company of California was maintaining and operating a service station in the city and county of San Francisco, at Fourth Avenue and California Street. The said Standard Oil Company had been maintaining said station for many years and had had various equipment at said station for the purpose of greasing and caring for auto vehicles. Desiring to increase the capacity of said equipment the said Standard Oil Company of California entered into a contract with defendants "E. B. Lacer, a former copartnership consisting of Elmer B. Lacer, deceased, and Edward A. Green, formerly transacting business under the common name of E. B. Lacer", which said E. B. Lacer copartnership will be hereafter referred to as "respondent", and said respondent proceeded to install at the said station an automatic hydraulic automobile lift or hoist, which was to be used by the said Standard Oil Company of California in the maintenance and operation of said station. At a period of time of either one or two days pre-

vious to the twenty-fourth day of August, 1928, the said respondent placed said hoist in position and on or about the twenty-fourth day of August, 1928, plaintiff Speidel, appellant herein, and who will hereinafter be referred to as appellant, was employed by the Standard Oil Company of California, owner and operator of said service station, to replace the concrete around the said hoist. On the twenty-fourth day of August, 1928, appellant proceeded to said service station upon request of and under instruction of the Standard Oil Company, and proceeded to place said concrete around said hoist. It appears that at the said time the said hoist was resting on or near the ground and was secured by the use of two bolts. Said hoist at the said time was connected with the air compression service of said station, under exclusive control of the Standard Oil Company. Appellant secured a crescent wrench from an employee of the Standard Oil Company of California, at which time respondents or their agents were not present or notified to be present, and proceeded to release said hoist, with the apparent intention of releasing said hoist so that an opportunity might be had for placing said concrete around the said hoist. After certain work was done by appellant toward releasing said hoist, the said hoist raised in such violent manner that appellant was seriously injured.

The contention of respondents is that they had left such hoist in a condition that concrete might be placed around it without the disturbance of the bolts holding said hoist in position; that the said hoist had been tested before, without injury to any person. However, after the injury to appellant, an examination of the valve in said hoist disclosed the presence of a piece of cast iron which is claimed by appellant to have interfered with the proper operation of the valve on said hoist. Appellant further claims that the necessary operation of said hoist with safety required that approximately thirty-five gallons of oil be placed in the cylinder of said hoist, in order that a proper regulation of application of air in raising said hoist be equalized; that the said oil had not been placed in said hoist; that it was the duty of respondent to have placed said oil in said cylinder and that by reason of the failure so to do, respondent was guilty of negligence proximately causing the injuries to appellant. Respondent claims that it was not customary to

place the oil in said hoist until after the placing of concrete for the reason that the weight of said oil would make the said hoist top heavy and might move it out of plumb.

Respondents further claim that they had not instructed appellant to place said concrete, that there was no privity of contractual relationship between appellant and respondent and that respondent had no° notice or knowledge of the contract between the Standard Oil Company and appellant.

As the title will indicate, this action was formerly brought against the Standard Oil Company of California, as well as E. B. Lacer et al. At the conclusion of the first trial a nonsuit was granted as to all defendants. Upon motion for new trial, a new trial was granted as against "E. B. Lacer (a former copartnership consisting of Elmer B. Lacer, now deceased, and Edward A. Green, formerly transacting business under the common name of E. B. Lacer), Edward A. Green, individually and as the surviving and liquidating partner of E. B. Lacer, a former copartnership, formerly transacting business under the common name of E. B. Lacer". The second trial was then had as against the last-named defendant, eliminating the Standard Oil Company of California from further consideration. At the conclusion of the second trial, the jury found a verdict against the plaintiff and appellant and in favor of respondents E. B. Lacer et al.; thereupon plaintiff and appellant moved for a new trial upon various grounds, which said motion for new trial was denied by the trial court and from which said judgment plaintiff and appellant has appealed.

We have read the testimony as set forth in the transcript and have given careful consideration to the same. There is no particular question of fact involved in the action in so far as this appeal is concerned. Questions of law, in our judgment, are the only matters to be considered and we will devote our attention to them.

██ (I) Counsel for appellant complains of the fact that an instruction refused by the court and found on page 497 of the transcript was not given. This instruction was refused by the trial court. The instruction has to do with that rule of law known as "Res Ipsa Loquitur", referring to *White* v. *Spreckels,* 10 Cal. App. 287 [101 Pac. 920], in which case we find that this court has held that the doctrine of *"res ipsa loquitur"* did not apply unless the instrument

causing the injury was under the exclusive control and management of the defendant.

In Corpus Juris, volume 45, page 1214: "Ordinarily the mere fact of an accident or injury, even though it be such that by virtue of the doctrine it 'speaks for itself', does not identify the wrongdoer and permits no presumption or inference whatever as to who was to blame for the negligent act, and hence, as a necessary basis for the application of the doctrine, it must appear, in conformity with the statements of the rule, that the negligent cause or thing which produced the injury complained of was wholly and exclusively in the possession, and under the control or management, of defendant or his servants. Accordingly the doctrine cannot be invoked where there is a divided responsibility and the accident is due in part to the act of a third party over whom defendant has no control. . . . "

From the testimony in this case it would appear as though the Standard Oil Company, if it did not have entire control, had at least partial control over the instrument which is claimed to have caused the damage to appellant. There is no testimony to show that respondent had been notified of the intention to place in operation the said instrument after respondent had installed and left the same. In fact, the sole control of said instrument, by reason of the opportunity of the Standard Oil Company's agents to operate the air compression left it entirely within the Standard Oil Company's power to turn on or off the air compression. There is no evidence to show that respondent was ever consulted with reference to the time when said bolts mentioned in the transcript as being connected with the hoist were to be removed or when the cement paving was to be placed. In the case of divided responsibility the doctrine of "*res ipsa loquitur*" could not be invoked. Under the testimony in this case, this court is of the opinion that the trial court was correct in its ruling in refusing the instruction complained of with reference to that doctrine.

There are numerous decisions cited by the respective parties. However, the Supreme Court of the United States has announced the general rule which in our judgment prevails. (*San Juan Light & Transit Co.* v. *Requena*, 224 U. S. 89, 98 [32 Sup. Ct. 399, 56 L. Ed. 680].) "When a thing which causes injury, without fault of the injured person, is shown

to be under the *exclusive control of the defendant,* and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.'' (Italics ours.)

■ From the testimony in this case it would seem that the exclusive control did not rest within respondent, but that the Standard Oil Company of California, if not having exclusive control, had at least partial control. Therefore respondent could not be held under the doctrine invoked by appellant. It further appears from the testimony that the compressed air used in raising said hoist was at all times under the control of the Standard Oil Company. Respondent had no control, under the evidence, of the operation of the compression plant used to operate said hoist. There was no evidence before the court, from an examination of the transcript, showing that any negligence upon the part of respondent indicated that respondent had not been careful in the erection and construction of said hoist, but without contradiction the testimony shows that the agent of respondent examined the valves connected with said hoist and that said valves were in good operating condition at the time he left said hoist at a period of time of about one or two days previous to the accident. If the piece of metal which is alleged to have caused said accident entered the mechanism of said hoist, the jury must have found that it came from an outside source over which respondent had no control and which respondent with reasonable and ordinary care could not have guarded against. The character and description of said piece of metal indicated that it had no connection with any portion of the construction of said hoist or pipes leading thereto.

■ Appellant complains of the instruction given at the request of the defendant, in words as follows: ''No matter how slight the contributory negligence of a plaintiff may be, such plaintiff is not entitled to a verdict against such defendant, no matter how great the negligence of such defendant may be.'' While the instruction complained of does not contain a full exposition of the law with reference to contributory negligence, yet this instruction, in the light of later cited cases, must be considered with the instructions as

given in their entirety. The court gave various instructions at the request of the plaintiff, some five in number, in which the jury was expressly instructed that unless it found that plaintiff's negligence proximately caused or proximately contributed to the happening of the accident, plaintiff would not be prevented from recovering judgment.

Counsel for appellant has cited *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237].) On page 396 of said decision we find that the court has stated: "Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. We will not assume that they may not have understood the charge as we understand it. The instructions must be considered in their *entirety*, and if, as so considered, they state the law of the case *fairly and clearly*, then they are, as a whole, unobjectionable, even though by selecting isolated passages from single instructions they may in some respects be amenable to just criticism." (Italics ours.)

In *Douglas* v. *Southern Pac. Co., supra,* the court cites with approval *Alloggi* v. *Southern Pac. Co.*, 37 Cal. App. 72, 79 [173 Pac. 1117]. " 'We are not unmindful of the rule that conflicting and contradictory instructions upon a material phase of the case require a reversal where it cannot be ascertained from the record before us which instruction prevailed, or was likely to prevail, with the jury. While it is true that the instruction complained of in the present case is erroneous, and in a measure in conflict with several other instructions which correctly stated the rule of law relative to contributory negligence, nevertheless the correct rule of law *was so specifically stated and restated* to the jury that we feel that the idea in the several correct instructions must have preponderated in the consideration of the jury, and that as a consequence the erroneous instruction neither contributed to nor controlled the verdict' " (italics ours) ; and on the same page, referring to *Saltzen* v. *Associated Oil Co.*, 198 Cal. 157, 161 [244 Pac. 338], " 'that this court ought not to adopt or give application to a rule that the positive effect of an express instruction upon a specific subject which is admittedly correct will be overcome by a general though erroneous instruction not expressly dealing

with that subject in the absence of a very clear showing that the jury have been misled thereby' '', and from this we would conclude that the Supreme Court has held that if the jury was not confused, and from the evidence in the case there is no conclusion that we could draw that it was confused, it would seem that the giving of an incomplete or imperfect instruction if corrected by a later instruction would not avail appellant.

■ (III) Appellant further complains that appellant and respondent, being independent contractors on the same premises, the trial court erred in giving certain instructions complained of therein. We have carefully considered the instructions given, and while some of the instructions were possibly incomplete, the instructions taken as a whole sufficiently set forth the law of the case.

■ (IV) The appellant further states that because of the insufficiency of evidence the court was not justified in instructing the jury upon the doctrine of contributory negligence. The evidence of the case warranted the giving of such instructions. There is sufficient evidence from which the trial court and jury might have found that certain acts of the plaintiff proximately contributed to the cause of the accident, if believed by the jury. The testimony of various defense witnesses, if believed by the jury, sufficiently warranted the court in instructing upon the question of contributory negligence. ■ As before stated, where there is evidence given upon any particular question and it is left to the jury to determine the weight or credibility of the witnesses and the value of the testimony, the jury having acted, the appellate court will not disturb the finding of the jury upon such disputed questions of fact. The presence of the piece of foreign metal in the valve is not satisfactorily accounted for by either party, but there is no evidence presented which apparently would show that the respondent was guilty of any negligence with reference to the presence of said piece of foreign metal in the valve. Therefore we conclude that the jury having heard the evidence, and having passed upon the same, we could not disturb its finding with reference to questions of fact; and with reference to the instructions of the court we find that in considering them as a whole the jury was fully instructed as to the law and that if incomplete instructions were given the jury was not

misled by the incomplete instructions, but that as a whole it was fully informed as to the law.

No other points raised by appellant are in our judgment of sufficient importance to be considered by this court. The court did not err in denying a motion for a new trial and the judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.